S. Barry Paisner
Arizona Bar No. 009793
Hinkle Shanor LLP
218 Montezuma Avenue anta Fe, New Mexico 87501
(505) 982-4554
E-mail: bpaisner@hinklelawfirm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Millie Shaw, | **COMPLAINT FOR JUDICIAL REVIEW** |
| Plaintiff, | |
| vs. | |
| Office of Navajo Hopi Indian Relocation, an Administrative Agency of the United States, | |
| Defendant. | |

Millie Shaw, Plaintiff, brings this action because the Defendant has wrongfully denied her application for relocation assistance benefits in violation of the law.

## INTRODUCTION

1. In 1962, this Court determined that the Navajo Nation and Hopi Indian Tribe held joint interests in a large area of land in northern Arizona long occupied by members of both tribes, known as the Joint Use Area ("JUA"). *Healing v. Jones*, 210 F. Supp. 125, 192 (D. Ariz. 1962).

1

2. Twelve years later, Congress enacted the Navajo-Hopi Land Settlement Act ("Settlement Act"), Pub. L. No. 93-531, § 12, December 22, 1974, 88 Stat. 1716, which authorized partition of the JUA between the tribes into Hopi Partition Land (HPL) and Navajo Partition Land (NPL), ordered tribe members who lived on the partitioned land of the other tribe to relocate to the land partitioned to their own tribe, and created a generous benefit program to compensate the thousands of primarily Navajo people who would be forced to abandon their homes on lands partitioned to the other tribe.

3. The Settlement Act is to be implemented to "insure that persons displaced as a result of the Act are treated fairly, consistently, and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 C.F.R. § 700.1(a).

4. To manage this unprecedented forced relocation, the Settlement Act created an agency now known as the Office of Navajo and Hopi Indian Relocation (ONHIR), and gave it five years from the date of the submission of the "relocation plan" to complete the relocation of affected Navajo and Hopi tribal members. Pub. L. No. 93-531, 88 Stat. 1718 § 14 (a), 88 Stat. 1718.

5. Seven (7) years after the passage of the Settlement Act, in 1981, ONHIR finally issued its relocation plan. Pursuant to the terms of the Settlement Act, ONHIR was mandated to complete the relocation by the end of 1986.

6. On July 7, 1986, ONHIR closed the application process for relocation benefits.

7. Approximately nineteen (19) years later, in 2005, ONHIR began a new round of benefit applications for certain individuals who had previously contacted ONHIR to apply for benefits.

8. Today, more than forty (40) years after the passage of the Settlement Act and thirty-one (31) years after Congress mandated relocation be completed, ONHIR still has not provided relocation benefits to all of the eligible Navajo relocatees, including the Plaintiff, Ms. Shaw.

9. To be eligible for relocation assistance and benefits, an individual Navajo must have lived on the HPL, relocated from the HPL after the passage of the Settlement Act, and been a head of household at the time of relocation. *See* Settlement Act, Pub.L No. 93-531, §15 (g) Dec. 22 1974, 88 Stat 1719, formerly codified at 25 U.S.C. 640d-14 (c).

10. Millie Shaw (Ms. Shaw) meets all the eligibility requirements.

11. ONHIR's denial of relocation benefits to Ms. Shaw was arbitrary and capricious, not supported by substantial evidence, and unlawful.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 701 *et seq.*, and the Settlement Act, Pub. L. No. 93-531, § 12, December 22, 1974, 88 Stat. 1716.

13. Ms. Shaw has exhausted his administrative remedies.

14. Venue is proper in this District pursuant to Pub. L. No. 93–531, §15(g), Dec. 22, 1974, 88 Stat. 1719, as amended by Pub. L. 100-666, §10, July 8, 1980, 102 Stat. 3929 November 16, 1988, *formerly codified as* 25 U.S.C. 640d-14(g), which requires appeals of ONHIR eligibility determinations to be brought in this Court.

## PARTIES

15. Ms. Shaw is an enrolled member of the Navajo Nation who was relocated from her home on the HPL due to the Settlement Act, Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716.

16. Defendant ONHIR is an independent federal agency created by Congress pursuant to the Settlement Act, Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716, as amended by Pub. L. No. 100-666, § 4(a), November 16, 1988, 102 Stat. 3929, 3934, to carry out the relocation of members of the Navajo and Hopi tribes who resided on land partitioned to the other tribe and to provide relocation assistance benefits for households required to relocate.

17. ONHIR has a fiduciary obligation to administer its program in a fair manner to assure that Navajo relocatees receive the full benefits they are entitled to receive.

## LEGAL RESIDENCY HISTORY

18. Ms. Shaw was born on September 5, 1955 and raised in Red Lake Chapter, Arizona.

19. Ms. Shaw's ancestral home was eventually decreed to be on the HPL.

20. At no point did Ms. Shaw voluntarily abandon her ancestral home.

**ADMINISTRATIVE APPEALS**

21. On February 27, 2008, this Court determined that ONHIR had breached its fiduciary duty to all Navajo and Hopi individuals subject to relocation by failing to inform them of their potential eligibility for relocation benefits prior to the July 7, 1986 application deadline. *Noller Pete Herbert v. ONHIR,* CV-06-3014-PCT-NVW ONHIR (D. Ariz. 2008). In response, ONHIR issued its Policy 14, which reinstated the eligibility requirements that were in place for individuals who submitted applications for relocation benefits on or before July 7, 1986. Millie Shaw is one of those individuals.

22. On August 31, 2010, in compliance with *Noller Pete Herbert v. ONHIR,* ONHIR accepted Ms. Shaw's application for relocation assistance benefits, which was subject to the eligibility requirements set out in Policy 14.

23. On April 5, 2013, ONHIR denied Ms. Shaw's application for relocation assistance benefits.

24. On June 14, 2013, Ms. Shaw appealed the denial of her request for benefits.

25. Ms. Shaw had her administrative hearing on December 18, 2015.

27. At the hearing Ms. Shaw established the following:

a. She was born and raised in Red Lake, Arizona, an area which was eventually designated as the HPL and on December 22, 1974 he was a resident of the HPL.

b. She dropped out of Highschool during her freshman year in 1972.

c. She procured employment at the Red Lake Day School and continued to assist in the maintenance of the family's homestead and livestock.

    d.    Ms. Shaw's family had two traditional homesteads, within the Former Joint Use Area, on a contiguous customary use area known as Elephant Feet (summer home) and John Daw Mesa (winter home).

    e.    Ms. Shaw, at all material times, was a traditional Navajo

    f.    After the property was divided by the JUA fence, Ms. Shaw continued to use the HPL portion of her customary use area for grazing.

27.  ONHIR legal standard for the customary use area certification was set forth in the Executive Directors decision on September 4, 2012 which certified applicant Minnie Woodie CF #5124 eligible for Relocation Assistance benefits.

28.  Ms. Shaw is eligible for relocation benefits under the Act, ONHIR regulations, and Policy 14 because he resided on the HPL before December 22, 1973; continued to reside on the HPL when she became a head of household; did not abandon her residence on the HPL prior to the passage of the Settlement Act; did not reject relocation benefits; has not already received relocation benefits; did not relocate with a different head of household; and did not sign an Accommodation Agreement with the Hopi Tribe allowing her to remain temporarily on HPL pursuant to the Navajo-Hopi Land Dispute Settlement Act of 1996, Pub. L. 104-301, § 2, October 11, 1996, 110 Stat. 3649.

29.  The Hearing Officer ("HO") in his Findings of Fact, Conclusions of Law and Decision found that the testimony of Ms. Shaw and her witnesses credible except with regard to their testimony about grazing on the HPL after the erection of the fence.  The HO found this testimony not credible.

30. The HO's finding regarding Ms. Shaw's residency and head of household was arbitrary and capricious, not in accordance with the law or agency policy and not based on substantial evidence.

35. ONHIR issued a Final Agency Action on March 30, 2016, upholding its denial of Ms. Shaw's eligibility for relocation assistance benefits.

## COUNT I

36. The forgoing allegations are incorporated by reference as if fully set forth herein.

37. ONHIR's final decisions regarding eligibility determinations are subject to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

38. This Court may set aside an agency decision that is "unsupported by substantial evidence" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A), (E).

39. ONHIR's denial of Ms. Shaw's eligibility for relocation benefits adversely affect her and is arbitrary and capricious, not supported by substantial evidence, and is contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Millie Shaw respectfully request that this Court:

A. Enter judgment reversing ONHIR's denial of Ms. Shaw's eligibility for relocation benefits and ordering ONHIR to find Ms. Shaw eligible for relocation benefits;

B.   Award Plaintiffs' costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412; and

C.   Award Plaintiff such other relief as the Court deems just and proper.

Respectfully submitted this 15th day of August 2019.

                              s/ S. Barry Paisner
                              Hinkle Shanor LLP
                              218 Montezuma Avenue
                              Santa Fe, New Mexico 87501
                              bpaisner@hinkleshanorllp.com
                              *Attorney for Plaintiff*