WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Millie Shaw, | No. CV-19-08238-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiff Millie Shaw seeks judicial review of the administrative decision by the Office of Navajo and Hopi Indian Relocation ("ONHIR") denying her application for relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 1.) At issue are the parties' cross-motions for summary judgment, which are fully briefed. (Docs. 13, 18, 20, 22.) For the following reasons, the Court will grant ONHIR's motion, deny Ms. Shaw's motion, and affirm ONHIR's decision denying benefits.

## **BACKGROUND**

**I. Navajo and Hopi Relocation Assistance**

In 1882, President Arthur issued an executive order establishing a reservation in northeastern Arizona for the Hopi Nation and "such other Indians as the Secretary of Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled on the reservation alongside the Hopi. *Id.* "The Hopi and Navajo [Nations] coexisted on

the 1882 reservation for 75 years, but became entangled in a struggle as to which [nation] had a clear right to the reservation lands." *Id.* In 1962, this district court concluded that the two tribes held joint, undivided interests in most of the reservation, referred to as the joint use area ("JUA"). *Id.*

Twelve years later, after establishment of the JUA failed to solve inter-tribal conflicts over the land, Congress passed the Navajo-Hopi Settlement Act in 1974. *Id.* The Act authorized the district court to make a final partition of the reservation after federally mandated mediation efforts between the nations failed. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113, 115 (9th Cir. 1980.) The Act also directed creation of ONHIR's predecessor, the Navajo-Hopi Relocation Commission, to provide services and benefits to help relocate residents located on lands that the partition allocated to the other nation. *See Bedoni*, 878 F.2d at 1121-22; 25 U.S.C. § 640d-11. To be eligible for relocation benefits, a Navajo applicant bears the burden of demonstrating that he or she was (1) a legal resident on the Hopi Partitioned Lands ("HPL") on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147.

**II. Facts and Procedural History**

Ms. Shaw applied for relocation benefits on July 28, 2010. (Doc. 11-2 at 81-86.) ONHIR denied Ms. Shaw's application on April 5, 2013, finding that Ms. Shaw did not provide evidence that she "resided on or continuously used the HPL for traditional purposes as of December 22, 1974." (*Id.* at 110-11.) Ms. Shaw timely appealed the denial, and an independent hearing officer ("IHO") held an appeal hearing on December 18, 2015. (*Id.* at 131-33, 144.) The IHO consolidated Ms. Shaw's appeal hearing with that of her brother, Eugene Daw. (*Id.* at 154.) Ms. Shaw, Eugene Daw, and other witnesses testified. (*Id.* 154-84; Doc. 11-3 at 1-44.)

In March 2016, the IHO issued a written opinion upholding ONHIR's denial. (Doc. 11-3 at 152–57.) The IHO found that "[t]he overwhelming evidence in this appeal shows that [Ms. Shaw] moved to the [Navajo Partitioned Lands ("NPL")] home long before the partition fence was erected and that her move was complete and full-time" and that "[Ms.

Shaw] [did] not satisfy[] her burden of proving legal residence on HPL as of the date of passage of the Act." (*Id.* at 157.) ONHIR's final agency action on March 30, 2016 affirmed the IHO's decision. (*Id.* at 160.) On August 15, 2019, Ms. Shaw commenced this action for judicial review pursuant to 25 U.S.C. § 640d-14(g) and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq. (Doc. 1.)

## **STANDARD OF REVIEW**

In reviewing a federal agency's decision under the APA, the district court applies a "narrow and deferential" standard of review. *Mike v. ONHIR*, No. CV-06-0866-PCT-EHC, 2008 WL 54920, at *1 (D. Ariz. Jan. 2, 2008). A reviewing court may reverse an ONHIR decision under the APA if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122. "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mike*, 2008 WL 54920, at *1 (quoting *Info. Providers' Coalition for Def. of First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991)). Under the arbitrary and capricious standard, courts must determine whether the agency's decision "was based on consideration of relevant factors and whether there has been a clear error of judgment." *Id.* (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.2d 1468, 1471 (9th Cir. 1994)).

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the court reviews an agency decision under the APA, "the focal point [] should be the administrative record already in existence, not some new record made initially [by] the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). Thus, when conducting "judicial review pursuant to the APA, 'summary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did.'"[1] *O'Daniel v. ONHIR*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *3 (D.

---
[1] In this Court's view, these sorts of cases would be better resolved via procedures similar to those used in social security disability appeals. *See* LRCiv 16.1. Summary

- 3 -

Ariz. Sept. 18, 2008) (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)).

**DISCUSSION**

Ms. Shaw argues that (1) the IHO applied an incorrect standard for determining legal residency and (2) the IHO's decision is arbitrary, capricious, and not supported by substantial evidence. (Doc. 13.)

**I. The IHO Applied the Proper Legal Standard for Determining Residence**

To be eligible for relocation assistance benefits, agency regulations require that applicants prove their timely residency on HPL. 25 C.F.R. § 700.147 ("The burden of proving residence . . . is on the applicant."). Ms. Shaw argues that in determining legal residence, courts must apply the same standards used in determining domicile for purposes of diversity jurisdiction because legal residence and domicile are functionally equivalent. (Doc. 13 at 5–7.) Ms. Shaw asserts that once a plaintiff has established her domicile on HPL, the burden shifts to the agency which, in order to deny benefits, must demonstrate the plaintiff changed her legal residency prior to December 22, 1974. (*Id.* at 6 (citing *Jes Solar Co., Ltd. v. Matinee Energy, Inc.*, CV-12- 626 TUC/DCB, 2015 WL 10939972, at *2 (D. Ariz. March 30, 2015)).) ONHIR argues that Ms. Shaw waived this argument because she did not raise the issue in the proceedings before ONHIR. (Doc. 18 at 12.)

After the IHO issued a written opinion on the appeal, Ms. Shaw failed to request reconsideration, and the agency adopted the IHO's opinion as its final decision. (Doc. 11-3 at 160.) Now, for the first time, Ms. Shaw challenges the legal standard applied by the IHO. Where, as here, a plaintiff in an administrative proceeding fails to raise an issue before the administrative tribunal, the issue cannot be raised on appeal from that tribunal.

---

judgment briefing (particularly the use of separate statements of facts) is a poor fit because, at bottom, the Court is tasked with reviewing an administrative record and determining whether the agency's decision comports with the relevant legal standards and is supported by enough evidence. There are no "fact disputes," as that phrase is understood in traditional summary judgment motion practice. There is no trial in the event the parties disagree about what the evidence shows. No, there is just a cold paper record inherited from the administrative agency, and arguments by the parties about whether the agency applied the correct legal standards and issued a decision supported by that record. If so, the agency's decision is affirmed. If not, it is reversed. Why summary judgment procedures routinely have been used to resolve these cases is lost on the Court.

*Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985). Ms. Shaw has therefore forfeited this argument.

Even if she did not forfeit this argument, her position fails on its merits. This Court has previously rejected her burden-shifting argument. *Bahe v. ONHIR*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *3 (D. Ariz. Dec. 28, 2017), *aff'd sub nom. Bahe on behalf of Bahe v. ONHIR*, 770 F. App'x 871 (9th Cir. 2019) ("Plaintiff's burden shifting framework is inconsistent with the language of § 700.147(b) and agency procedures."). Instead, agency regulations place the burden on the plaintiff to establish residency as of December 22, 1974. Additionally, this Court has rejected the argument that the standard for determining legal residency for purposes of relocation benefits is the same as the standard for determining domicile for subject matter jurisdiction purposes. *Tso v. ONHIR*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *5 (D. Ariz. Apr. 26, 2019) (concluding that the "legal resident" standard is not the same as the "domicile" standard).

## II. The IHO's Decision is Supported by Substantial Evidence

The IHO's determination that Ms. Shaw did not reside on HPL during the relevant time period is supported by substantial evidence. The IHO found as follows: Ms. Shaw resided with her parents and siblings at the summer camp, known as Elephant's Feet, an area partitioned for the use of the Navajo Indians. (Doc. 11-3 at 156.) Although her family might have maintained a traditional use area, Ms. Shaw, herself, "did not participate in ANY traditional use activities that involved her parents' HPL home after she dropped out of school in 1972." (*Id.*(emphasis in original).)

Plaintiff argues that the IHO's decision was arbitrary, capricious, and unsupported by substantial evidence for three reasons: (1) Plaintiff's residency as a minor was derivative of her parents' residency, and her parents received relocation assistance benefits; (2) the IHO failed to apply agency policy set forth in the *Minnie Woodie* decision, departing from the IHO's decision in Ms. Shaw's sister, Marie Daw's, case; and (3) the IHO relied on irrelevant facts from after December 22, 1974. None of these arguments are persuasive.

### A. Ms. Shaw's Residency is Not Derivative of her Parents' Residency

Plaintiff is correct that, as a minor, she assumed the residency of her parents. However, to qualify for relocation benefits, Plaintiff was required to prove that she was (1) a legal resident of the HPL on December 22, 1974, and (2) a head of household on or before July 7, 1986. Ms. Shaw cannot rely on her presumed residency as a minor as a basis for residency on December 22, 1974, at which point she was an adult, mother, and head of household.

### B. The "*Minnie Woodie*" Policy

Ms. Shaw argues that the IHO ignored precedent and ONHIR policy by failing to abide by the *Minne Woodie* decision. "An agency's decision is arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so." *Andrzejewski v. F.A.A.*, 563 F.3d 796, 799 (9th Cir. 2009) (citations omitted). The *Minnie Woodie* decision acknowledged that traditional use areas, such as cornfields and grazing areas, qualify for relocation benefits. (Doc. 11-3 at 58-64.) Specifically, the IHO in the *Minnie Woodie* decision stated,

> It has been a long-standing ruling by the undersigned that, if a customary use area existed as of December 22, 1974, the entire area would be treated as an adverse relocation outcome, even if only part of the customary use area was awarded to the Tribe of which he/she is not a member, so long as there is evidence of continuous use of the <u>entire</u> area as of the date of the Act.

(*Id.* at 63 (emphasis in original).) A traditional use area policy is not codified in federal regulations, but ONHIR has historically recognized that an individual's maintenance of traditional use areas is a basis for residency. *Begay v. ONHIR*, 305 F. Supp. 3d 1040, 1048 (D. Ariz. 2018), aff'd, 770 F. App'x 801 (9th Cir. 2019).

The *Minnie Woodie* policy is a "non-precedential, individualized ruling[]" that is nonbinding on ONHIR. *Begay v. ONHIR*, 770 F. App'x 801, 802 (9th Cir. 2019). Even if it were binding, however, the IHO's decision is consistent with the *Minnie Woodie* policy. The IHO considered whether Ms. Shaw presented evidence that she personally participated in traditional use activities on the HPL and concluded that she did not.[2] (Doc. 11-3 at 156.)

---

[2] The record supports this conclusion. Ms. Shaw stated that she herded sheep on "just the Navajo side." (Doc. 11-3 at 2.) Conversely, the record contains no statement of

- 6 -

Ms. Shaw had the burden to prove her own fact-specific case, and the Court defers to the IHO's factual determination that Ms. Shaw did not.

### C. The IHO's Decision is Supported by Relevant Facts

Ms. Shaw argues that the IHO's decision relied on events occurring after the relevant date, December 22, 1974. Even if the IHO considered post-1974 facts, which the Court does not decide, the IHO nevertheless justified his decision with evidence, including testimony, indicating that Ms. Shaw lived at the Navajo summer camp full-time from the birth of her son in May 1974, when she became head of household, until December 22, 1974, and did not participate in any traditional use of the HPL during this period. (*Id.*) The IHO came to a reasonable conclusion based on relevant evidence.

### CONCLUSION

The IHO's decision denying Ms. Shaw relocation benefits comports with the applicable legal standards, is reasonable, and is supported by substantial evidence. Accordingly,

**IT IS ORDERED** that Ms. Shaw's motion for summary judgment (Doc. 13) is **DENIED** and ONHIR's cross-motion for summary judgment (Doc. 18) is **GRANTED**. The administrative decision denying Ms. Shaw's application for relocation benefits is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and terminate this case.

Dated this 13th day of April, 2020.

_____
Douglas L. Rayes
United States District Judge

---

her traditional use activities on the HPL.